For three reasons, the District Court below abused its discretion in denying Procter & Gamble's preliminary injunction motion and granting Kraft's motion for an indefinite stay. First, the District Court erred in holding that its grant of Kraft's stay motion rendered Procter & Gamble's preliminary injunction motion moot, notwithstanding the controversy that was then raging between Procter & Gamble and Kraft and continues to rage to this day over Kraft's continuing infringement of Procter & Gamble's 418 patent. Second, the District Court abused its discretion in granting Kraft's stay motion without considering Procter & Gamble's evidence of prejudice or irreparable harm or indeed Procter & Gamble's preliminary injunction motion. Third, the District Court abused its discretion by granting Kraft's motion to stay, that is, at the behest of the accused infringer, whereas Section 318 of the patent statute only grants the authority of the District Court to grant a stay at the behest of the patent owner. What should the standard be for granting a stay? Let's assume that there is no request for a preliminary injunction. There is broad authority under those circumstances to grant a stay pending the reexamination? Yes, depending on the kind of reexamination. And assuming we lose on 318, then the standards would be the same. And the District Courts throughout the Ninth Circuit, we haven't been able to find a Ninth Circuit case, but the District Courts throughout the Ninth Circuit have relied on a three-part test, and part of that test is directly addressed to whether the stay would unduly prejudice the non-moving party. I do not understand what Ninth Circuit law has to do with stays pending PTO reexamination, but let's pass that one on. So if there were no request for a preliminary injunction, there would be broad authority to grant a stay? That's correct. So what should the rule be where there is a request for a preliminary injunction? That there can't be a stay? No, Your Honor. We don't argue that position, but what we say is that the same analysis of whether the stay would unduly prejudice the non-moving party then counts as consideration of the irreparable harm evidence that the patentee has put into evidence as part of the preliminary injunction motion. And indeed, in Procter & Gamble's opposition to the stay motion, Procter & Gamble cited to the evidence that it had already placed into the record in connection with its preliminary injunction motion. Wait a minute. Let me see if I can understand that. Are you suggesting that if you satisfy the requirements for a preliminary injunction that the court has to grant a preliminary injunction even though it stays the remainder of the proceeding pending the reexamination? Is that what you're saying? Yes, Your Honor, because what we would have here is we would have a conflict. We have the same consideration of the harm to, in this case, the patentee would be presented both for the preliminary injunction motion and for the stay motion. Now, just because we establish harm, though, doesn't, of course, end the inquiry. For preliminary injunctions, the court could decide, for example, that we didn't show a substantial likelihood of prevailing on the merits and therefore could deny the preliminary injunction on that ground. And at that point, the district court would consider the stay motion on the traditional factors that govern the grand denial of a stay motion. But you wouldn't be entitled to a preliminary injunction, as I understand in other cases, if there were a substantial question of invalidity. That's correct, Your Honor. So doesn't the PTO make such a determination when it grants a reexamination? No. Does the PTO make a finding that there's a substantial question of patentability? No, Your Honor. What the district court did here was it deferred that decision on whether to actually... But you're not answering my question. My question is when the PTO grants reexamination, doesn't it have to make a finding that there's a substantial question of patentability? And if, in fact, the district court were to defer to that finding, that would be a finding sufficient to defeat a preliminary injunction, wouldn't it? Not necessarily, because, for example, this patent contains some 55 patent claims, 9 of which were asserted in the preliminary injunction motion. And so the question would be, to what extent did the district court's determination affect the 9 patent claims that were asserted in the preliminary injunction motion? And, of course, we know that in this case, when the patent office did finally get around to deciding whether there was a substantial new question of patentability, it issued its action-closing prosecution, rejected all of Kraft's arguments, and confirmed all 55 claims of Kraft's and of Procter & Gamble's 418 patent. But that's still subject to appeal. That's correct, Your Honor. What happened was, after the action-closing prosecution, then the USPTO issued a right of appeal notice, and that started the appeal first to the Board of Patent Appeals and Interferences, and then to this court. So it's not a final determination as yet? It is no. It is not a final determination for purposes of issue prosecution, which is, of course, the big effect of inter-parties re-examination. Your complaint basically is not that the state was issued, but that the judge did not take a look at all of the factors when it considered the preliminary injunction motion. That's our second argument. The first argument is that the district court erred as a matter of law in holding that the preliminary injunction was rendered moot by its decision of the state. We think that's wrong as a matter of law. Our second position is that the district court did not consider the harm to Procter & Gamble, and indeed did not even consider or make any findings either on that harm or Procter & Gamble's preliminary injunction motion. It didn't consider any of the four factors. That's correct. For the preliminary injunction. The district court did not consider and did not make any findings, and expressly responded to Counsel for Kraft that the preliminary injunction had no bearing on the state motion. And when I tried to argue the irreparable harm factors and the balance of the hardship below, the district court expressly admonished me that that was for another day. And then in her order, the district court's only discussion of harm was the fact that because she was deciding the state motion very early in the proceedings, that would tend to reduce the harm to the parties. Excepting for the moment that the proposition that the determination that the preliminary injunction request was legal error, and that she should have said it's denied in light of the fact that I'm staying at least until the end of the proceedings before the PTO. What, in your view, let me go back to Judge Dyke's question and make sure I understand your position on this. What, in your view, would have been the result if the district court had said, all right, I have a reexamination here. The PTO has undertaken to reexamine this patent. And therefore, I find, based on that, and without any further examination of the record, that the requirement that there be a serious question of patentability with respect to the patent has satisfied me. I'm not sure I understood exactly what your response to Judge Dyke was on that. Well, we're not confronted, in this case, with that issue. Well, we're pretty close, I think. Because I don't think that there's a huge, well, let's just assume, let's not argue whether we're there or not, but let's assume that, hypothetically, that we were there. Would there be error if the district court did that? What exactly would be the district court's error? Well, what we would have to look at is whether the patent office decision said there was a substantial new question of patentability on each of the claims that was presented in the preliminaries. Suppose they did. Then I think that I would think, traditionally, district courts in that situation have waited until there is a substantive office action to determine whether there is a real challenge to the patent claims. In other words, simply the substantial new question of patentability is rarely enough. I mean, what that shows is that there's new prior art or that there's new arguments about the existing prior art that were not considered before, and the patent office is going to consider them. That, to me, doesn't suggest a substantial challenge. What presents the substantial challenge is the first office action where the patent and trademark office comes in and says, we reject these claims. Of course, here, they didn't do that. So what you're suggesting, if I understand what you're saying, is that the substantial question of patentability that the patent office has found is not the same thing as a substantial question as to the validity of the patent that is pertinent in re-employment injunction. That's exactly right, Your Honor. And, of course, in this case, we don't have that because the patent office had already confirmed all 55 of the claims, including all nine of the claims that were issued. So what should happen? Should the district court look at the PTO proceeding and make an independent judgment as to whether there is a serious question of validity based on what's been presented in the PTO proceeding? What has happened traditionally, Your Honor, in the district courts— I don't understand the tradition. Go ahead. What has happened traditionally in the district courts is that they will take a look at the office action that comes from the patent and trademark office. And we pointed out a lot of cases below where that was what they had done. And if the patent office ends up rejecting all of the claims that are at issue, or a substantial amount of the claims that are at issue, or issues an office action that interprets the claims in such a way that affects, for example, the infringement analysis that's before the district court, then the district court will look at that and be guided by that. We don't have a final determination by the PTO here. As I understand it, this group of examiners' decision is on appeal to the court, right? That's correct. So what the district courts have done is they've looked substantively at what happened. It's not just a black or white issue. Tell me what the district courts have done. Tell me what they ought to do. What should they do? You're saying that the patent office's determination of a substantial new question of patentability isn't sufficient. And you also agree, as I understand it, that there is a serious question of patentability that the preliminary injunction is defeating. So what should the district court do in looking at the PTO proceeding to determine whether that is involving a serious question as to validity? In the circumstance that we have here, where we have an examiner's decision but we don't have a decision by the board and it hasn't gone to the district court, what should the district court do to evaluate whether there is a serious question? Because the district court has determined that it's not going to make that determination. It's going to rely on the PTO to make the determination of validity. Correct. So what should the district court do to determine whether this requirement for a preliminary injunction is met? The district court should take a look at the office action, or in this case the action closing prosecution, and see what the effect of that action by the PTO is on the particular claims that it has asserted before it. For example, it would look here and say that the patent office affirmed the patentability of every single one of those claims. So what would happen if the board reversed it? I'm sorry? What would happen if the board reversed it? Well, at that point, the district court would be confronted with another issue and likely a renewed motion for a statement. A renewed motion for a statement. Can you renew it in this court? No, no, no, no, no. I took that to be a hypothetical. Okay. If you're talking about in this circumstance? In this circumstance, right. If the patent office board reverses the examiners. Assuming it does, then what happens to the district court's position at that point in time if she relies on the review made by the examiners? Regardless of that circumstance, the district court still should have looked at the irreparable harm evidence that Crocker and Gamble had submitted. Because the district court here made no findings on the merits. The only finding that the district court made here was merely by virtue of Cramp having filed this petition for inter-parties re-examination, and the fact that appeals were still pending on that, that was enough to suggest that there may be some efficiency. So the district court's analysis here was completely devoid of any analysis of the merits. It's still unclear what you want the district court to do. You're saying that if the exam, in the re-examination, rejects the obviousness and determines that the claims were patentable, that even though there is an appeal pending to the court, the district court should say, well, there's no serious question of patentability. No, Your Honor, that's what I'm saying. So you don't have to worry about that issue for the preliminary injunction. That's not what I said. Okay, so what did you say? The district court should go through, for the preliminary injunction, the analysis of the required factors, and in connection with the state... where you have an adverse decision by the examiner, that is, that there's no, the patent's not on the ballot, but there's an appeal pending to the board. What should he do? Well, if there is a decision by the examiner that the claims are patentable, the district court has no basis to look at the re-examination then pending in that posture and say that there is a substantial new question, there is a substantial question merely by virtue of the re-examination proceeding. There may be other evidence, because recall that the evidence that can be relied upon in a re-examination proceeding, including an inter-parties re-examination, is very limited, so there could be other invalidity challenges. And so just like the fact that the re-examination decision may only affect some of the claims, it may affect only some of the alleged basis for invalidity. So it's not a black or white issue like the district court treated it in this case. It's much more complex. Very well, why don't we, we will save you two minutes of rebuttal time. And why don't we hear from the opposing counsel, if you could add three minutes to Mr. Finstein. Good morning, Your Honor. If you may please the court, my name is Claude Stern. I represent Kraft Foods Global. I'd like to address the issues that Your Honor is having appeal. Fundamentally, as Your Honor already knows, the fundamental question for this court is whether or not Judge Hamilton abused her discretion by off-calendaring a preliminary injunction motion at the time she was considering the motion to stay. Now, Mr. Rooklage made a comment during his presentation to Your Honors, which I think is important to correct. There is no question, there is no question that Judge Hamilton considered all the evidence that was presented by P&G as part of its preliminary injunction motion, but in the context of the motion to stay. I just want to be sure we're clear on this. Judge Hamilton specifically said at the hearing, it's in the transcript, that she's read all the papers. The papers that were filed, our motion to stay, Procter & Gamble's opposition to the motion to stay, our reply, incorporated all the papers that were the damage associated or alleged irreparable injury declarations that were associated with the preliminary injunction motion. Judge Hamilton said that she had read all the papers at the time of the transcript. In her order that she issued that granted the stay, she begins that order by stating, having read the parties' papers and carefully considered them. Where are you reading from? I'm sorry, Your Honor. It's Judge Weissman's page A1. It's the first page in the record. Page A1. Oh, I see. This is the 1011. Yes. Your Honor, if you direct your attention to line 16 on the first page, she states, having read the parties' papers and carefully considered their arguments and the relevant legal authority and good cause of hearing. And then she continues. So the fundamental thresholds. It's not very clear as to whether she read all the papers, including the injunction motions, or just the opposition to the stay. But, Your Honor, in their opposition to the stay, they expressly incorporate their, and I don't mean obliquely, they specifically refer to, by name, each of the declarations that were identified by them in support of the preliminary injunction motion. So I just want to make sure that the panel understands that this isn't a case of where Judge Hamilton ignored or disregarded the evidence that related to the preliminary injunction motion. The only finding she made is that it would be efficient to defer the PTF. I'm sorry? The only finding that she made is that it would be efficient to defer the PTF. She seemed to think that she didn't have to consider the preliminary injunction. Is your position that once a stay is granted, that you don't have to consider the preliminary injunction? That automatically defeats it? Yes, Your Honor. Actually, if I can be in particular, our position is this, that the district court is granted, in response to your question, the district court has great discretion to do a variety of things with respect to the motions in front of her, including the ordering in which she's going to hear them. Now, what she has the ability to do is say, I understand that you followed the preliminary injunction motion, which is exactly what you said. I'm not talking about the ordering. I'm talking about the substance of this. Obviously, the granting stays pending reexamination is an appropriate thing in a lot of circumstances. But at the same time, the patentee has concern that when that happens, that the infringement may continue during the period of the reexamination, which can take quite a while. So are you saying that once a stay is granted, that the preliminary injunction motion is, in fact, moved, doesn't have to be considered? But I'm saying, Your Honors, that the technical procedure that you have. Oh, forget about technical procedure. Is it moved? Yes, it is moved. So the court does not need to address the merits of the preliminary injunction? Not as a preliminary injunction. In that point, Your Honors, if I may, once the judge says I'm going to stay the case. You're saying, let me see if I can cut to the chase here. You are saying, as I understand your argument, that this judge at least already ruled in effect on the preliminary injunction because she folded all the appropriate inquiry into the preliminary injunction into the stay disposition. Once she ruled there shall be a stay, she in effect said, and there will not be a preliminary injunction because the case has not been made out on the merits of the preliminary injunction request. Is that correct? Not quite. OK. Because I want to be clear. I think it's clear Judge Hamilton did not address the preliminary injunction motion. But if I can modify Your Honor's comment, what the judge clearly did, she didn't address the likelihood of successful merits. She didn't have to. All you have to do is define that there is some disabling failure to satisfy the right to go requirements of the preliminary injunction. Yes. Whether it's validity or failure to likelihood of successful merits and so forth. And you're saying that she found some disabling failure on the part of the movement. I am saying that. Within the scope of the statement. Yes. Exactly. Within the scope of the statement. But that's why I realize, and I'm not trying to be impudent, Judge Dike, but the judge did consider the evidence, but she did not consider it in the context of a preliminary injunction motion. All the evidence was before her, but in the context of the motion to stay. And it is not of use of discretion for the district court to say, I'm going to consider this evidence, but I'm not going to consider it in the context of a preliminary injunction motion. I'm going to consider it in light of the stipulated standard. There's no disagreement by Procter & Gamble and Kraft. Judge Hamilton employed a standard for determining whether a stay should be granted. It was reached by the parties. The parties agreed to the tripartite standard, which the courts in California had been using. She employed that standard, and she looked at the evidence that Procter & Gamble submitted relative to the preliminary injunction motion, but not in the context of the preliminary injunction motion. In the context of the motion to stay. There's no error. There's no use of discretion. Frankly, Judge Hamilton did exactly what she was supposed to do. Now, I'm not saying that every judge has to do what she does. Obviously, discretion is broad. I think it could have been that another judge may have handled it differently. But certainly, discretion for the district judge encompasses the opportunity and the option to say, I'm going to look at the stay motion first. I'm going to consider the evidence that's being presented by the parties. And based on that evidence, I'm going to make a determination about a stay. Well, wouldn't she have to make that statement in the record? All she said was that the motion for the injunction was moot, period. There was no consideration of any of the factors or otherwise. No findings on the issue of the preliminary injunction motion, except that it was moot. Your Honor, Rule 65 does require findings, but she did not rule on the preliminary injunction motion. No, I know that. No, she did not rule on it. She said it was moot, so there was no requirement for her to rule on it. That's what your position is, whether or not, when she did make that determination, whether she had to make it clear in her record that she had made that determination. We've looked for authority on that position, Your Honor. We've looked for authority that says that when a court grants a motion to stay, it has to go through all the evidence that's before it and articulate that evidence in a particular order. We could find nothing. The judge had a 45-minute hearing before her in which Mr. Rookledge and I appeared and argued the evidence. She had all the evidence before her. She obviously had all the papers that your honors have reflecting this, and she issued an order in which she recites that she's reviewed all the papers and considered all the evidence. But there is no, and as far as I know, there is no case that said that her error was in not reviewing the evidence and articulating the specific standard that she was employing with respect to each piece of evidence. It was not completed on the irreparable injury question, right? It was completed on behalf of P&G. P&G completed it. They did not, by the way, they did not claim that they had a need for additional evidence and the court should delay the stay motion. They were perfectly willing to go forward with the stay motion with the evidence before it. We provided additional evidence, obviously, in the context of the stay to oppose what we claimed was the irreparable injury. And I want to make this clear to your honors. The standard for irreparable injury under the preliminary injunction standard of the Ninth Circuit is different than the litigation prejudice standard for a stay motion. But nonetheless, in the spirit of completeness and to make sure that we didn't miss anything, we had in our new motion to stay and in our reply to the motion to stay all the evidence that rebutted the alleged irreparable injury claimed by P&G. So Judge Hamilton had before her all the evidence concerning alleged irreparable injury or lack thereof when she was considering the stay motion. We don't know what she did with that evidence. We don't know whether she weighed it one way or the other. If she had made a statement to the effect that she had considered all of the evidence, including the evidence in there for irreparable injury, and I deny the preliminary injunction, then I think it would be a difficult task to overcome it. But I understand that. Also, I did not believe that it was incumbent upon Judge Hamilton to rule on the preliminary injunction. I think it is within her discretion to say, I'm going to resolve the stay motion. If in resolving the stay motion, I address all the evidence that's been presented to me in the context of the preliminary injunction motion, I think she's absolutely correct when she says, because of that, the motion is not moved. Now, obviously, the dispute between the parties is not moved. But that motion, once she grants the stay motion, not only that motion, but any proposed motions to compel motions for summary judgment, any other motions the parties might think about bringing, are technically moved because the stay motion essentially supersedes them. Now, I don't understand this. Why, if someone has made a showing of entitlement to a preliminary injunction, shouldn't the judge consider whether a preliminary injunction should be granted in the examination? Because the patent office can't grant a preliminary injunction. Why isn't that the job of the district court to decide, OK, I've decided I want to look to the PTO to resolve these validity questions. But I'm going to decide whether there should be a preliminary injunction pending the outcome of the PTO proceeding. I think, logically, before that determination, the court has to make a determination about the sufficiency of the preliminary injunction motion. Your Honor's question is, shouldn't the judge address the preliminary injunction motion once a well-formed preliminary injunction motion is filed? And it seems to me, perhaps, that the district court ought to say, look, I've decided that it's more efficient for me to stay this proceeding pending the reexamination. Even though I have decided to stay the proceeding pending the reexamination, I need to consider, nonetheless, whether a preliminary injunction should be granted so that the patent fee is protected during the period of the reexamination proceeding. In other words, it doesn't seem to me that the standard for a stay, the satisfaction of the standard for a stay, necessarily answers the question of whether you should or should not get a preliminary injunction pending the state proceeding. I think you're right. The technical motion for stay standard doesn't address the preliminary injunction standard. Having said that, if one reads the transcript, Judge Hamilton was deeply bothered by a couple of aspects of the preliminary injunction motion. One in particular, which stands out, is that she said, I can't issue a preliminary injunction motion. I can't rule on it unless I'm in a position to make a determination about likelihood of success in the merits. And in the patent case, I can't make a determination about likelihood of success in the merits unless I understand the patent. And I can't make a determination about understanding the patent until I do a claim construction. And there was a dispute. And Mr. Rutledge conceded there was a dispute about claim construction. And in their moving papers, in the preliminary injunction papers, Procter & Gamble had failed to offer any sort of claim construction. Instead, in footnote 6 of their motion for preliminary injunction, they punted it. They simply said, look, we're claiming that all the words and that all the terms are patentable. But you're asking us to substitute ourselves for the district court. You're asking us to look at the record and say that a preliminary injunction shouldn't have been written. It's clear that she did not address that question because she said it's moot rather than it's deniable. Your Honor, with all due respect, during the hearing and at the end of the hearing, she makes clear on the record that she was going to have taken all the evidence. She says this on the record. She's going to look at all the evidence. And if she denies the stay, if she says, if she denies the stay, you're all going to come back in three weeks for a case management conference. And at that time, what we're going to do is we're going to talk about the discovery associated with the preliminary injunction motion and whether or not and at what time there will be a claim construction hearing. So at that point, she's evaluating the sufficiency of the evidence before on the stay motion and the preliminary injunction motion. So you think that, in effect, she denied the preliminary injunction motion? No, Your Honor. I mean, that's got to be your position. In response to the fact that sounds like exactly what you're saying is that we don't need to look so hard at the question of whether there's any entitlement to a preliminary injunction because, in effect, she's already found that the case was not made out for a preliminary injunction. Isn't that what you're saying? Technically, no, Your Honor. Technically, no. And the reason is… But let's just speak practically. She did what judges do every day. She said, this motion is incomplete. It's defective. I'm off calendar. I told you two things. I find that the case for a preliminary injunction is not made out because of the failings in the motion? Your Honor, I think that represents an adjudication. I don't think she adjudicated the merits of the motion. She didn't say, I find that you cannot prove likelihood of success. She said, there have to be other stages, which this court, by the way, has counted. This court has said, before a preliminary injunction motion should be issued, the court has to do some sort of claim construction. She simply said, on this record, this is not a proper preliminary injunction motion. She didn't adjudicate it and deny it on the basis of the merits of the motion. She simply off-calendared it and said, look, we'll have to get to this at some later time. And that's an exercise of discretion. That's what judges do all the time. What is the effect of that? Isn't that really a denial? Isn't that an effective denial of the preliminary injunction? Well You off-calendar it forever, at this point in time, until the PTO acts according to the order. She's waiting until the PTO's determination is made final. And that means it's gone until that particular time. I think, my concern about that, Your Honor, is I think that it proves too much. My concern is that, on the one hand, it's true. She's not adjudicating a preliminary injunction motion. It's off-calendar. It's not being adjudicated. But I'm looking at the phrase, at the word denial. She has not ruled on a preliminary injunction motion. She's focused on another motion, a motion to stay in the state. This takes precedence. I'm going to focus on this particular motion. And this is the motion that I'm going to rule on. Everything else before me, if there was our motion for discovery, for expedited discovery in light of a preliminary injunction, that was moved as well. Everything is moved now that she's stayed in the act. She went to a preliminary injunction motion. Well, that's what stays do. Stays put a state of disrepair. But what happens on that time period? What about the potential irreparable harm to the patent? That was not considered by the court. I think it was. And, by the way, Procter & Gamble would have a remedy. If a court imposes stay and a party feels that something is happening outside the court, in commerce, that is causing an injury, they have the right to apply to the district court and say, we move to lift the stay. Something is happening. And we think this is information which the court should be aware of. And they have to, again, apply to the court for that. And the court has the discretion to look at that evidence and make a determination about whether or not the court should lift the stay. That, by the way, wasn't done here. That's to say the court looked at the evidence relative to the pre-I motion in the context of the motion to stay, granted the motion to stay. But at no point after that did P&G go to the court and say, we asked the court to lift the stay because of additional facts or new facts or new information, which I think would be the proper procedure if a party felt that a stay was causing them some sort of injury. One thing I have not addressed, Your Honor, is that perhaps from Your Honor's questions, there's no need for me to address it. We feel that there's a fundamental issue with respect to jurisdiction based on this court's precedent. In light of the decisions that this court has rendered, particularly the Gould case and the Hazard case, as well as this court's decision in Slip Track, we think that there's a serious question as to whether or not this court should be considering this appeal. Because how would you say that the decision is to move this preliminary injunction not be appealable? I don't understand. We may have an argument that the stay decision is not appealable, but the preliminary injunction to deny this movement is certainly not appealable. I direct Your Honor's attention to Slip Track, the decision authored by Judge Rice. In the Slip Track case, the plaintiff in that case had filed a motion for a temporary restraining order. The case was stayed. Before the case was stayed, the plaintiff filed an application for a temporary restraining order and an order to show cause. The court denied the temporary restraining order and for technical reasons also did not issue an order to show cause. The plaintiff in that case filed a motion for reconsideration of the TRO and OSC, and the district court denied it. When that plaintiff, Slip Track, appealed both the stay order and the denial of the motion for reconsideration of the TRO to this court, and this court's opinion in that case said, they considered the appeal on the stay because of the obvious difference between those proceedings and these proceedings, but with respect to the appeal of the alleged denial of the preliminary injunction, this here, the TRO. Which is a big difference. Well, I agree, but the plaintiff was claiming that what the court had done had denied injunctive relief with respect to the OSC in order to show cause. And by the way, the court didn't deny the order to show cause any more than, in this case, Judge Hamilton. She hasn't denied the preliminary injunction motion. Let me ask you the question this way. I'm asking the same question to Judge Steinke. If she gets that instead of saying, the plaintiff's pending motion for preliminary injunction is moot, if she had said, is denied as moot, would you think that your non-jurisdiction argument would lack force? Well, according to this court's decisions in the Habitat decision and the case I just cited, Slip Track, it looks like this court has determined under Section 1292.81, that's the determination about what represents a denial as an adjudication, some sort of finding. And my view, Your Honor, and again, we've cited all the cases that we can find on the subject, I think if the court had said it is moot, and so the court is not considering it, not adjudicating it, I don't think that's technically a denial of the motion.  Thank you, Your Honor. Thank you, Mr. Steinke. Let me briefly address jurisdiction. Slip Track is a very different case because in that case, there was a stay where the district court had determined that the preliminary injunction motion had never been properly noticed. The district court had, I'm speaking the author's opinion right here, the district court had rejected the temporary restraining order, but the appeal was not from that. The appeal was from the denial of the preliminary injunction. Correct, correct. And so Slip Track is a very different case. This case was discussed expressly in Woodard v. Sage, where the court pointed out at page 851 of the opinion, an order which is deemed to deny a preliminary injunction readily satisfies the parson requirements. And that's the way that the cases have fallen out. Turning to counsel's first suggestion, that this case is really about off-calendaring the preliminary injunction motion while the district court granted or considered the stay motion, that's simply not correct. This case is about the denial of the preliminary injunction motion as a result of the grant of the stay motion. And before you sit down, I want to ask you a policy question. It strikes me that your preliminary injunctions are requested in situations where the district court has decided to grant a stay in the re-examination, that there's a real risk that the preliminary injunction will go on for years. I mean, you, in fact, complained that the re-examination could take two and a half years. So to what extent should the length of the re-exam be taken into account in determining whether it's appropriate to grant a preliminary injunction? Should the preliminary injunction be re-examined periodically by the district court in the light of what happens in the PTO proceeding? Your Honor, Congress has provided for that by requiring the patent owner to post a bond in case the preliminary injunction turns out to have been wrong. On the flip side, I don't think that's a full answer to the problem. The problem is that you've got a preliminary injunction, which has been issued by the district court. The case has been stayed, and nothing's going on with the district court. Is that preliminary injunction just supposed to stay in effect for the whole length of time that the re-examination is taking place without any further consideration by the district court? As a practical matter, the accused infringer of that case could at any time come back to the Court of Equity and make a motion that the preliminary injunction be lifted. And in fact, we've kind of got the reverse side of that here, in that simply by going and filing a petition for inter-parties re-exam and subsequent appeals, Kraft is able to completely forestall Proctor and Gamble's litigation. Now, what happened was, as we know from the statement of related case, that Kraft filed another case against Proctor and Gamble, Proctor and Gamble counter-claim. The district court in that case transferred the counter-claim on a separate patent back to Judge Hamilton, and in view of this stay, she stayed that claim as well on a separate patent. So what's happened is you have exactly the opposite as a policy matter. It's not where a patentee is being able to grind an accused infringer for an indeterminate amount of time. It's where an accused infringer is able to grind a patentee, not only on the one patent that's involved in the re-examination, but on another patent. And now we've filed another supplemental notice of related case because Kraft has introduced a new infringing product. We've filed a new lawsuit on that, and we're expecting that there's going to be a motion for stay. I think the history shows that both the patentee and the infringer are trying to grind each other. And that's right. And so as a policy, what remedies are there? And Congress has provided that any time a patentee gets a preliminary injunction, the patentee has to post a bond. There is no flip side to protect the patentee against the irreparable harm that is going to be suffered during the interminable delay caused by the appeals through the Patent Office Board of Appeals, which, by the way, statistics show that that would take about 18 months. But that can be manipulated. For example, in this case, Kraft filed an ex parte re-examination and asked the Patent Office to combine the inter-parties re-examination with the ex parte re-examination. In other words, say to the Patent Office, let's start over. Let's start the clock all over. So that's something that can be manipulated, and that's the situation where the policy argument really should come down in favor of the patentee. Thank you.